UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. THOMAS
O/B/O R.L.T., A CHILD
       Plaintiff,                     CIVIL ACTION NO. 09-10561

    v.                              DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF            MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's second application for Supplemental Security Income benefits (SSI) on behalf of his son, R.L.T. Plaintiff filed for SSI alleging his child's disability since January 1, 1999. The first application was denied December 5, 2003 and not appealed. The ALJ declined to reopen it. The child was born in May, 1998. The defendant found that R.L.T. was ten years old, a school age child, at the time of the decision on April 12, 2005. The ALJ also found that the child had the severe impairment of attention deficit hyperactivity disorder (ADHD) and a learning disorder. The ALJ found "less then marked" limitation in the domains of Acquiring and Using information, Attending and Completing tasks, and Interacting and Relating with others. (TR 18-20) The ALJ found that since R.L.T. did not have marked limitations in two or more domains, or extreme limitations in one domain, the child was not disabled and the ALJ denied benefits. This became

the final decision of the agency from which plaintiff now appeals. Plaintiff alleges that the decision denying benefits was not supported by substantial evidence. Defendant contends otherwise. For the reasons discussed in this report, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying child's benefits be affirmed.

**Standard of Review**

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

**Standard of Disability For Child's Benefits**

Under the Social Security Regulations, child's disability is subject to a three step analysis. 20 CFR 416.924 et seq. The child must not have engaged in substantial gainful activity and have severe impairments expected to last for at least twelve months or be fatal. To

be found disabled, the child must meet certain criteria at Step three. A child will be found disabled if he has an impairment, or combination of impairments that meets, medically equals, or functionally equals in severity an impairment listed in the regulations at 20 CFR, Part 404, subpart P., Appendix 1; §416.924(d). A child's impairment will generally meet the Listings if it causes "marked" limitations in two domains, i.e. broad areas of functioning, or "extreme" limitations in one such area. 20 CFR § 416.911(d), 416.925(b)(2).

The regulations establish six separate domains relevant to this evaluation. These include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving and manipulating objects; (5)caring for self; and (6) health and well-being. The regulations, 20 CFR 416.926a(e)(2) state that a child has a marked limitation in the domain when his impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be seriously limited when the impairment limits only one activity or when the interactive and cumulative effects of the impairment limit several activities. A marked limitation is one that is more than moderate but less than extreme. It is said to be the equivalent of functioning that would be expected on standardized testing with scores that are at least two but less than three standard deviations below the mean. The ALJ articulated the standard to the father and grandmother at the hearing as "one that clearly sets the child apart from other children his age and background, . . an immediately apparent and serious thing." 20 CFR 416.926a(e)(2). Per the regulations,20 CFR 926a(e)(3), a child has an extreme limitation in a domain when his impairment "interferes very seriously" with his ability to independently initiate, sustain, or complete activities. An extreme

limitation is more than marked and would be equivalent of functioning at least 3 standard deviations below the mean. (Tr. 15) As explained by the ALJ at the hearing, an extreme limitation is one where there is virtually no ability to function in that area at all. These children are generally granted benefits before any ALJ hearing would be required. (Tr. 207-208)

**The ALJ's Opinion**

The ALJ reviewed the impairments in each of the six domains.

(1) *Acquiring and using information.* The ALJ found that the child requires special education and had reading and math skills below his age-appropriate level. However, recent intelligent testing confirmed the child had average intellectual functioning. The ALJ thus determined that the child had "less than marked" limitation in this domain.

(2) *Attending and completing tasks*. The ALJ noted that the child required medication for attention deficit disorder (ADD) and is somewhat hyperactive in class. The ALJ found no indication that these limitations were chronic in nature and concluded that the child had "less than marked" limitation in this domain.

(3) *Interacting and relating with others*: The ALJ noted that the child had gotten into some fights at school, but there was no indication of frequent suspensions or chronic behavioral problems. The ALJ concluded that the child had "less than marked" limitation in this domain.

(4) *Moving about and manipulating objects*. This domain was not shown to have been affected by the child's impairments. The child alleges no physical limitations and there is no indication he has any limitation with respect to using his arms and legs. The ALJ found no limitation in this domain.

(5) *Caring for yourself.* This domain was reviewed by the ALJ and he determined that the child was able to care for his personal needs and had no indication of communication deficits. Thus, the ALJ concluded that there were no limitations in this domain.

(6) *Health and physical well-being*. The ALJ noted that there were no indications of physical problems or need for persistent treatment. The child required medication for the attention deficit disorder but there was no indication of side effects from the medication. Thus, the ALJ concluded that there was no limitation in this domain.

**Plaintiff's Argument**

Plaintiff argues that the ALJ erred because the record supported either (1) an extreme limitation in attending and completing tasks, or (2) marked limitations in both attending and completing tasks, and acquiring and using information. Plaintiff argues that the ALJ should have discussed and considered the childhood disability evaluation form that was completed by Dr. Crowther, a medical professional, in September 2005. Dr. Crowther found that the child suffered no extreme limitations and a marked limitation in only one domain, that of attending and completing tasks.[1] (TR 108)

**Analysis**

It is clear that R.L.T. may have some severe learning difficulties and is ADHD. However, no evidence supports any more than marked limitations in the one domain of attending and completing tasks.

---

[1] However, giving complete credence to that review would not result in an entitlement to benefits because Dr. Crowther found marked limitation in only one domain, the same as the ALJ. In addition, there is no evidence of extreme limitation in any area.

At the hearing before the ALJ, plaintiff (the father) testified that he lives with son R.L.T. and his own mother (the child's grandmother) in Saginaw. The father has never been married. He has two other children, daughters who are younger than R.L.T.. They are fine and they live with their mother. One is in fourth grade. R.L.T. is also in the fourth grade and is in special education for all classes. He has not been held back. He has a reading limitation and an attention deficit disorder which requires counseling and medication for the condition. R.L.T. can generally make himself understood but does not have a good vocabulary. (Tr. 216) The father also indicated that the son was generally well behaved and had no physical problems. He cleans his room, takes out the trash, helps with yard work. (Tr. 216) He may not finish a project because he lacks concentration, but can do it. (Tr. 217) R.L.T. has no medical problems other than the ADHD. The medication has seemed to help him. (Tr. 218) He interacts with his sisters and although there are sometimes fights, he is not different from what one would normally expect. (Tr. 219) He has had some disciplinary problems at school but after one incident, not too much more. (Tr. 220) R.L.T. is respectful of his grandmother and his teachers. (Tr. 220) R.L.T. likes gym, computer class and video games. (Tr. 220) He goes to an after-school program every day from 3:30 to 6:15. (Tr. 221) On weekends, he gets together with other kids and plays. Generally, there are no problems. He can dress himself, sometimes has trouble with buttons, but washes, brushes his teeth, sleeps ok except for when there are gunshots in the neighborhood, runs, walks, no motor problems. (Tr. 223) He likes to watch TV, play basketball, and work on little toy cars at the house, taking them apart and putting them back together. In his father's opinion, he is a risk taker, sometimes trying to duplicate Motorcross events on his bicycle which he has watched

on TV. (Tr. 225) He has problems reading and feels bad when he comes home from school and has not been able to do the work. (Tr. 226) During the hearing, R.L.T. appeared to be drowsy and rubbed his eyes. His father reported that was because R.L.T. has allergies and the father had given him Benadryl prior to the hearing. (Tr. 227) The paternal grandmother also testified and reported that the child had comprehension problems. The child had to be constantly reminded and he is just like a live wire. In her opinion, this comes from the other side of the family–on his mother's side; that side is very slow. (Tr. 230)

A mental status examination showed attention and concentration were poor. The child had two I.Q. tests. The first one in 2003 showed verbal IQ of 80, with a performance IQ of 79 and a full scale IQ of 76, placing him in the borderline area of intelligence and the examiner opined that the child could have ADHD. Records from 2005 in the Saginaw school district indicate that when the child was in first grade, he had a history of being over active in class and testing confirmed evidence of ADHD. Records from the family physician Bernard Noveloso indicate that as of March 2005, the child suffered from an attention deficit disorder and he started the child on Ritalin.

The child underwent a psychological examination on August 29, 2005 performed by Nathalie Menedes, Ph.D. Mental status examination showed the child to be polite and able to follow directions well. Deficiencies were noted on memory testing. Child was fidgety and had difficulties with his ability to concentrate. Diagnosis included attention deficit disorder and a learning disorder. The child had a GAF of 65.

Saginaw school district records show reading and math and writing skills below grade level. An I.Q. test performed by Dr. Shanahan on December 8, 2005 show a verbal IQ of 105 a performance IQ of 91 and a full scale IQ of 98, placing the child in the average range, not borderline range, of intelligence. The child, who was then in second, grade had reading and math skills at first grade level. In December 7, 2006 the child was taking Concerta instead of Ritalin for an attention deficit disorder. A school activities questionnaire completed March 18, 2008 by the child's special education teacher indicated that the child was in fourth grade but generally functioned at first grade level with a short attention span and needing to be wrote refocused constantly. The child had been suspended due to fighting.

A review of the records was conducted by Dr. Crowther. He found that R.L.T.'s impairment or combination of impairments was severe but did not meet, medically equal, and was not the functional equal of any of the listings. (TR 106)   Dr. Crowther found marked limitations only in the domain of attending and completing tasks. In making that determination Dr. Crowther noted that the grandmother stated that the child was taking Ritalin but the prescription has now switched to Concerta which was more helpful. The grandmother stated the child is only able to follow one step instructions, need several reminders to do household chores, and often gets distracted. The teacher has indicated that the child is very active and hard to settle down. The child was noted by the teacher to be impulsive and easily distracted and needed redirecting. Because Dr. Crowther determined that only one domain had marked limitations, the evaluation would not support benefits even if this had been given full discussion and complete credence by the ALJ.

R.L.T. has less than marked difficulties in acquiring and using information. The records and statements by the father indicate that the child is of average intelligence, participates in sports, loves to play basketball, reads Harry Potter books (albeit with some difficulty), and understands what he sees on TV and in video games. Examples in the regulations indicate children could have difficulty in acquiring and using information when they do not understand words about this size or time (such as in/under or big/little or morning/night). R.L.T. does not show this. They may also have difficulty if they cannot rhyme words or the sounds in words, have difficulty remembering important things learned in school yesterday, difficulty in solving mathematics questions or computing arithmetic answers, or talk only in short simple sentences with difficulty explaining what he/she means. While R.L.T. had some difficulty writing, he had the ability to speak well and express himself. If he had three wishes, he would wish for a dog, a motorcycle, and a scooter. (Tr. 102) He participates in many activities and understand what goes on. He noted was able to spell his last name backward, knew who the president was, could recognize shares and colors and knew the names of characters on a TV show that he watched. (Tr. 103) Dr. Menendes noted that during the interview the child was polite, friendly, followed directions, and was cooperative. (TR 101) He was very active and inquisitive and enjoyed playing Dominos for fun. His thought content was normal and age-appropriate. Dr. Menendes felt that the borderline intellectual test results were under estimate of his actual ability which is consistent with the subsequent testing which puts him in the average range of intellectual functioning. (TR 103-105, TR 179).

While R.L.T. may have marked limitations in the domain of attending and completing tasks, he has had recent improvement with medication and counseling.  He can complete some household chores and self care items. (TR 47, 48, 101, 216, 220, 222, 224) He cleaned his room daily and emptied the trash, although he needed help and putting his things away properly. (TR 47)   He liked working on toy cars, drawing, and playing sports. (TR 48) His teacher reported that with his ADHD medication resulted in his being more attentive and gave him more control over his own actions. R.L.T. was able to focus on the lessons and activities without his many verbal outbursts, fidgeting and reporting on others. Although R.L.T. had trouble completing assignments because he had limited skills which were exacerbated by his missing the first 130 days of first-grade, he was making improvement now that he was on the medication and was more focused and cooperative. (TR 90)   In 2006, the child's father reported that the child was doing well in school.(TR 124)  The child was inquisitive, able to perform well on math testing, and his thought content was age-appropriate. (TR 108)  Considering the evidence as a whole, the ALJ's opinion denying benefits was supported by substantial evidence.   There is no showing that the continued existence of his learning problems moves him from marked to extreme limitations in this one domain and therefore he is not entitled to benefits.

**Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

<u>s/Virginia M. Morgan</u>
Virginia M. Morgan
United States Magistrate Judge

Dated: January 4, 2010

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 4, 2010.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan